UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| Sandra Argoe, | ) | Civil Action No. 5:19-cv-0171-KDW |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| Andrew M. Saul, Commissioner of Social Security,[1] | ) | ORDER |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I. Relevant Background

A. Procedural History

On July 15, 2015,[2] Plaintiff protectively filed for SSI under Title XVI of the Act, alleging a disability onset date of July 1, 2005. Tr. 188-96. After being denied initially, Tr. 99, and upon reconsideration, Tr. 115, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 132. In her Pre-Hearing Brief Plaintiff amended her alleged onset date to August 20, 2015. Tr. 289. The ALJ conducted a hearing on November 13, 2017, taking testimony from Plaintiff and

---

[1] Andrew M. Saul became Commissioner of Social Security in June 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g), Fed. R. Civ. P. 25(d).
[2] Although the Application Summary is dated August 20, 2015, Tr. 188, Plaintiff's protected filing date as referenced in the Disability Determination and Transmittal is July 15, 2015, Tr. 99.

Vocational Expert ("VE") William Stewart. Tr. 47-86. Representing Plaintiff at that hearing was her attorney, J. Leeds Barroll.[3] Tr. 47. The ALJ denied Plaintiff's claim in a decision dated March 8, 2018. Tr. 24-41. Plaintiff requested review of this decision from the Appeals Council. Tr. 180-86. The Appeals Council denied her request on January 9, 2019, Tr. 1-6, making the ALJ's March 2018 decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed January 21, 2019. ECF No. 1.

B. Plaintiff's Background

Plaintiff was born in June 1966 and was 49 years old when she filed her application for SSI on July 15, 2015. Tr. 206. In her form Disability Report-Adult dated August 20, 2015, Plaintiff indicated she completed the seventh grade, attended special education classes from 1978-81, and did not complete any specialized job training, trade, or vocational school. Tr. 211. Plaintiff did not list any past relevant work ("PRW") and indicated that she has never worked. Tr. 210-11. She listed the following medical conditions that limit her ability to work: depression, anxiety, panic attacks, bipolar disorder, and lower back pain. Tr. 210. Plaintiff indicated she was 5'7" tall, weighed 112 pounds, and her conditions caused her pain or other symptoms. *Id.*

C. Administrative Proceedings

On November 13, 2017, Plaintiff appeared with her counsel at an administrative hearing in Columbia, South Carolina and testified regarding her application for SSI. Tr. 47. VE William Stewart also appeared and testified at the hearing. *Id.* There was some discussion regarding Plaintiff's alleged onset date. Tr. 55. Counsel indicated that he changed it to the application date,

---

[3] The hearing transcript incorrectly identified counsel as "Mr. Barrow." Tr. 47.

August 20, 2015; however, the ALJ noted that the protective filing date was July 15, 2015. *Id.* The undersigned notes that in his Decision, the ALJ refers to the August 20, 2015 date. Tr. 27.

    1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff testified that she lived with her mother, was 51 years old, completed the seventh grade, was not currently working, and in the past had been a stay-at-home mom. Tr. 56-57. Plaintiff testified that she is bipolar and has severe depression, anxiety, and severe panic attacks. Tr. 58. She stated that she also has PTSD (post-traumatic-stress disorder), but she did not know she had it. Tr. 58-59. Plaintiff testified that with her depression she does not want to be around anyone and she "can't focus." Tr. 59. Plaintiff stated that she has panic attacks two or three times a day. Tr. 60. She described the symptoms as follows: "My heart races, I can't breathe, I feel like my heart is weak, feels weak, I shake all over, I can't think." *Id.* Plaintiff stated that she is currently taking Klonopin, and she takes Seroquel to help her sleep. *Id.* Plaintiff testified that she probably gets four hours of sleep each night. *Id.* Plaintiff testified that both racing thoughts and nightmares prevent her from sleeping. Tr. 61. Plaintiff confirmed that before taking Klonopin she was prescribed Xanax. *Id.* Plaintiff testified that when she had been taking one milligram of Klonopin three times a day, a doctor tried to discontinue her on Klonopin without tapering. Plaintiff stated this sudden withdrawal resulted in her having seizures and hearing voices. Tr. 61-62. Plaintiff stated she went to the hospital and was told that the doctor should not have taken her off the medication in that way. Tr. 62. Plaintiff testified that she is currently taking .5 Klonopin twice a day and takes one dosage of 300 milligrams of Seroquel at night. *Id.* Plaintiff confirmed that she had taken one Klonopin before the hearing. *Id.* Plaintiff testified that she usually takes one when she gets up in the morning and then takes another during the day when she feels a panic attack coming. Tr. 63. Plaintiff stated that she has no side effects from the medications. *Id.*

3

Plaintiff testified that she was no longer using marijuana and it had been close to a year since she last used it. Tr. 64. Plaintiff testified that she sees a doctor at the mental health clinic monthly, but for reasons unknown to her, the doctor was going to start seeing her every two or three months. Tr. 64-65. Plaintiff's counsel provided information regarding this change. He stated that Plaintiff was transferred to the Gaston office of the mental health clinic after the issue with the Klonopin prescription. Dr. Bjork of the Gaston office restarted Plaintiff on the Klonopin and now that Plaintiff is stable, she will start being seen every two or three months. Tr. 65. Counsel also noted that Plaintiff is also seeing a counselor at the clinic every month and has regular counseling sessions in addition to psychiatric treatment. Tr. 65-66.

The ALJ questioned Plaintiff about a ganglion cyst on her hand and Plaintiff testified that it causes pain in her hand every day. Tr. 67-68. The ALJ noted that when the cyst was diagnosed in June 2015 Plaintiff was given Percocet. Tr. 68. Plaintiff testified that she was no longer taking the Percocet and had not had any further treatment since June 2015. Tr. 69. Plaintiff testified that she was in a wreck in 2005 and has chronic pain in her back and neck, but she is not taking any medications for that pain. *Id.*

Plaintiff testified that she lives with her mother in an apartment that has three or four steps to the entrance. Tr. 70. Plaintiff stated that she is able to dress herself and take care of her personal hygiene. *Id.* Plaintiff testified that she has three children but does not see them often. Tr. 70-71. She stated she has grandchildren that she sees when she goes to church once or twice a month. Tr. 71. Plaintiff testified that her mother is 79 years old and does most of the household chores. *Id.* Plaintiff stated that she cleans her bedroom and sometimes tries to do dishes. Plaintiff stated that her mother will not let her cook, but Plaintiff will prepare microwave meals. Tr. 71-72. Plaintiff stated that her mother does the sweeping and vacuuming. Tr. 72. Plaintiff testified that she is able to drive a car

and has a driver's license; however, her uncle usually drives her to doctors' appointments and her mother shops for groceries and household items. Tr. 73. Plaintiff testified that she does not like being in crowds and does not drive very much. Her typical trips are short trips to a convenience store. Tr. 73-74. Plaintiff stated that sitting for prolonged periods bothers her back and she can sit for about an hour before needing to change positions. Tr. 74. She indicated that she will stand up to relieve discomfort. *Id.* Plaintiff testified that she can stand for 10-15 minutes before her back will start to bother her. Tr. 75. Plaintiff stated that to relieve her back pain she will lie down and place a heating pad on her back. *Id.* Plaintiff testified that she unable to walk far but she can walk across the street to her friend's house. *Id.* Plaintiff stated that she has problems lifting and carrying items but can probably lift a bag of sugar. Tr. 76.

Plaintiff testified that she is not taking any drugs that are not prescribed for her. Tr. 76. The ALJ indicated a notation in the record from August 2017 for a positive drug screen. Plaintiff stated that she had surgery on her earlobes and was given Norco. Tr. 77. Plaintiff stated that she last drank alcohol on a beach trip five years ago. *Id.* Plaintiff stated that she has not been back to the beach or on any other vacation trips. Tr. 78.

In response to questions from her attorney Plaintiff testified that she and her husband divorced when their children were still at home and he got custody of the children. Tr. 78. Plaintiff testified that she has mood swings and will sometimes lash out at people. Tr. 78-79. Plaintiff stated that she has problems trusting people. Tr. 79.

  2. VE's Testimony

The ALJ asked the VE to assume "a hypothetical individual who has the same age, education, and lack of past work" as Plaintiff with the following limitations:

> For purposes of Hypothetical No. 1 let's limit this individual to medium levels of exertion as defined within the DOT [Dictionary of Occupational Titles] and

5

the SCO [Selected Characteristics of Occupations]. Let's further assume that this individual could never climb ladders, ropes, or scaffolds; could occasionally crawl; could frequently stoop, crouch, and engage in handling, fingering, and feeling with the right upper extremity.
 The individual would be required to avoid all exposure to hazards, such as unprotected heights and moving machinery. Moreover, this individual would be limited to simple, routine tasks, and an environment that would require no more than occasional changes in a routine work setting.
 The individual could frequently interact with supervisors, co-workers, and the public. And the individual could not be in a workplace where alcohol or controlled substances would either be sold, served, packaged, or manufactured, or where substance use would be a significant component of the job or environment in which she would be working.

Tr. 80-81. The ALJ asked if there would be any jobs in the national economy that such an individual could perform. Tr. 80. The VE responded there would be medium level unskilled jobs available and provided representative examples of hand packager, DOT number 920.587-018, medium, SVP of 2, unskilled, nationally 58,000 jobs; warehouse worker, DOT number 922.687-058, medium, SVP of 2, nationally 40,000 jobs; and sorter, DOT number 706.587-014, medium, SVP of 2, unskilled, nationally 35,000 jobs. Tr. 81-82.

For his second hypothetical the ALJ asked the VE to assume the same individual as in hypothetical No. 1, but "would be capable of occasional interaction with supervisors and co-workers. This individual could never interact with the public. The individual would be further limited to simple, work-related decision making . . . ." Tr. 82. The VE opined that the same jobs would be available. Tr. 82-83. For his third hypothetical the ALJ added that the individual "would be absent from work three days each month on an unscheduled basis." Tr. 83. The VE opined that no job would be available for an individual with those limitations. *Id.* The VE noted that his testimony was consistent with the information in the DOT except that the DOT does not address absenteeism. The VE stated that his response to the third hypothetical was based on his education, experience, training, and study of jobs in the workplace over the years. *Id.*

Plaintiff's counsel posed the following hypothetical:

> Assume that portion of hypothetical one which sets out a medium RFC, no hazards or moving machinery, and unskilled work, and occasional changes in the work setting, only that portion of hypothetical one, and add to that the inability to sustain concentration or pace for two consecutive hours because of extreme inability to understand, remember, or apply information to perform work activities, and extreme limitation in interacting with others, including supervisors, co-workers, and the public.

Tr. 83-84. Counsel agreed with the ALJ's clarification that an extreme limitation would mean an individual who could not sustain concentration and pace necessary for work for two hours on a sustained basis. Tr. 84. The VE responded that there would be no job that would match that limitation. *Id.*

## II. Discussion

### A. The ALJ's Findings

In his March 8, 2018 decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since August 20, 2015, the amended alleged onset date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; ganglion cyst of the right hand; major depressive disorder; panic disorder; and polysubstance abuse/dependence (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she can never climb ladders, ropes, or scaffolds, can occasionally crawl, and can frequently stoop, crouch, and engage in handling, fingering, and feeling with her right upper extremity. She

must avoid all exposure to hazards such as unprotected heights and moving machinery. Moreover, she is limited to simple, routine tasks and simple work-related decision making in an environment requiring no more than occasional changes in a routine work setting. She can occasionally interact with supervisors and co-workers and can never interact with the public. She cannot be in a workplace where alcohol or controlled substances are sold, served, packaged, or manufactured, or where substance use is a significant component of the job or environment in which she is working.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on June 15, 1966 and was 49 years old, which is defined as a younger individual age 18-49, as of the amended alleged onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 20, 2015, the amended alleged onset date (20 CFR. 416.920(g)).

Tr. 29, 31, 39-40.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

8

or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling

C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d

---

at Step 3).

846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff alleges that the ALJ (1) erred in deciding the case based on Plaintiff's drug-seeking behavior, (2) failed to give proper weight to the opinion of her treating physician, (3) erred in rejecting IQ testing, (4) erred in assessing Plaintiff's residual functional capacity ("RFC"), and (5) violated SSR 16-3p in assessing credibility. Pl.'s Br. 1, ECF No. 13.

    1.    ALJ's Consideration of Plaintiff's Drug-Seeking Behavior

Plaintiff asserts that the ALJ is penalizing her for having drug-seeking behavior without making the proper determination as to her disability status pursuant to the regulations. Pl.'s Br. 4. Plaintiff argues that "even if the ALJ thinks the plaintiff is just a drug addict, he must first make the determination as to whether the plaintiff would still be disabled were she not unjustly seeking Klonopin." *Id.* The Commissioner contends that the ALJ's finding that Plaintiff's substance abuse is a severe impairment does not trigger the drug addiction and alcoholism ("DAA") analysis under the regulations. Def.'s Br. 13, ECF No. 14.

The applicable regulation provides:

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935. SSR 13-2p explains the polices for considering whether drug addiction or alcoholism is material to the determination of disability. The ruling provides that a materiality determination will be made only under the following circumstances:

i. We have medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder, *and*
ii. We find that the claimant is disabled considering all impairments, including the DAA.

SSR 13-2p, 2013 WL 621536 at *4 (emphasis added). "If the ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis of determining whether the drug or alcohol addiction is a contributing factor material to the determination of disability." *Shunkwiler v. Astrue*, Civ. A. No. 6:07-921-TLW-WMC, 2009 WL 302307, at *20 (D.S.C. Feb. 9, 2009). Here, the ALJ did not find that Plaintiff was disabled, so there was no need for him to make a finding that her drug abuse was a contributing factor.

2. Treating Physician's Opinion

Plaintiff contends the "ALJ violated the treating physician rule in rejecting the treating source opinion of Dr. Bjork by stating that Dr. Bjork's opinion 'bears no rational relation to any of the evidence in the record.'" Pl.'s Br. 7. Defendant argues that "substantial evidence supports the ALJ's evaluation of Dr. Bjork's opinion." Def.'s Br. 15.

Social Security regulations require that medical opinions in a case be considered together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b).[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

Generally, the opinions of treating physicians are entitled to greater weight than other evidence and the regulations have enumerated particular factors for ALJs to consider when evaluating those opinions. *See* 20 C.F.R. § 416.927(c). If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96–2p;[6] *see also* 20 C.F.R. § 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record). However, "the rule does not require that the testimony be given controlling weight." *Hunter*

---

[5] For claims filed on or after March 27, 2017, the regulations changed as to how adjudicators would consider and articulate medical opinions. *See* 20 C.F.R. § 416.920c. Because Plaintiff's claim was filed prior to March 27, 2017, 20 C.F.R. § 416.927 is applicable.

[6] SSR 96-2p was rescinded effective March 27, 2017 for claims filed on or after March 27, 2017 because of revisions to the final rules including that "adjudicators will not assign a weight, including controlling weight, to any medical opinion for claims filed on or after March 27, 2017." *See* 2017 WL 3928305. However, because this claim was filed prior to that date, SSR 96-2p is

13

*v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curium); *see also Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001).

SSR 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

Statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions, but rather, are administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183 at *2 (July 2, 1996). "However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.* at *3.

      a.      Opinions of Dr. Debra Bjork

On October 4, 2017, Dr. Bjork completed a Psychiatric Review Technique form on Plaintiff. Tr. 526-36. Dr. Bjork indicated that Plaintiff's impairments were not severe and that her medical dispositions were based on Listings 12.04 Depressive, Bipolar, and Related Disorders; 12.06

---

applicable.

Anxiety and Obsessive-Compulsive Disorders; and 12.15 Trauma and Stressor-related Disorders. Tr. 526. Dr. Bjork indicated that Plaintiff satisfied the A, B, and C criteria of each of the Listings and marked "extreme" limitations for all of the Paragraph B criteria. Tr. 529, 531, 536. On the same date Dr. Bjork completed a Questionnaire regarding Plaintiff and confirmed that she was Plaintiff's treating psychiatrist. Tr. 537. Dr. Bjork noted that she was treating Plaintiff for symptoms of anxiety, depression, and broad mood swings that were at the "marked" level and caused by the objective condition of major depression. *Id.* Dr. Bjork opined that the symptoms would prevent Plaintiff from having the ability to sustain concentration or pace for two consecutive hours and that since August 2015, Plaintiff would have been unable to sustain a full-time job on a reliable and consistent basis. *Id.*

b. ALJ's Consideration of Dr. Bjork's Opinions

The ALJ considered Dr. Bjork's opinion and gave it little weight "as it bears no rational relation to any of the evidence of record." Tr. 37. The ALJ noted the following:

> Treatment records mention repeatedly the claimant's likely display of symptom exaggeration in an effort to obtain medication and further, the claimant failed to display any interest in recommendations outside of her requested medications. Moreover, the claimant's medications were tapered and eventually stopped in an effort to motivate her to follow other treatment recommendations, yet she then simply sought medications from emergency departments and urgent care facilities. As set forth above, treatment records fail to establish objective findings to support the extreme limitations opined by Dr. Bjork, and therefore, little weight [is] given to Dr. Bjork's opinions.

Tr. 37-38.

c. Discussion

Plaintiff contends that the ALJ's statement—that Dr. Bjork's opinion bore no rational relation to the evidence of record—is extreme and is not supported by substantial evidence. Pl.'s Br. 7. Plaintiff cites to notes in the medical record made by other counselors and clinicians that she

15

claims support Dr. Bjork's opinions. *Id.* at 8-10. The Commissioner cites to treatment records that noted Plaintiff "had a normal appearance; cooperative attitude; calm behavior; normal eye contact; normal speech; logical and goal directed thought process; no delusions, suicidal ideation, homicidal ideation, obsessions, or hallucinations; euthymic mood; appropriate, but occasionally mildly impaired attention and concentration; average language; good judgment and insight; and average fund of knowledge (Tr. 549, 551, 553, 555, 557)." Def.'s Br. 15. The Commissioner contends this is substantial evidence that supports the ALJ's evaluation of Dr. Bjork's opinion. However, the ALJ did not cite these treatment records to support his assessment. The Commissioner's argument is only an impermissible *post hoc* rationalization for upholding the ALJ's decision. *Ellis v. Astrue,* No. 07–3996, 2009 WL 578539 at * 8 (D.S.C. Mar. 5, 2009) (rejecting *post hoc* rationale for ALJ's decision); *Nester v. Astrue,* No. 08–2045, 2009 WL 349701 at * 2 (E.D. Pa. Feb. 12, 2009) (noting that the court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ.").

The ALJ cited to Plaintiff's drug-seeking behavior and lack of supporting treatment records as reasons for discounting Dr. Bjork's opinion. Tr. 38. While Plaintiff's behavior may impact her credibility, the "Commissioner is obligated to consider the full record to determine whether Plaintiff's recognized severe impairments render her disabled, including a proper consideration of the opinions of her treating physicians and other expert opinions in accord with the standards of the Treating Physician Rule." *Hogue v. Colvin*, No. CV 6:14-3718-RMG, 2016 WL 430482, at *4 (D.S.C. Feb. 3, 2016). In his discussion of Plaintiff's RFC, the ALJ noted that in 2015 Plaintiff's counselor, David Henderson, noted that Plaintiff's mental conditions would prevent her "from having the ability to sustain concentration or pace for a period of two consecutive hours" and she would be unable to sustain full time work on a reliable and consistent basis. Tr. 32-33. The ALJ also

noted that Henderson indicated Plaintiff had depressive disorder under Listing 12.04 and an anxiety disorder under Listing 12.06 with both resulting in marked and extreme limitations. Tr. 33. The ALJ also discussed the psychological evaluation in 2017 by Dr. Robert Brabham who "opined the claimant likely meets the requirements of 12.04 and 12.06, setting forth the characteristics for each that satisfies the listings." Tr. 35. The opinions of Henderson and Brabham are consistent with that of Dr. Bjork. The ALJ's statement that Dr. Bjork's opinion "bears no rational relation to *any* of the evidence in the record" is blatantly inaccurate based on the records the ALJ himself noted. The court finds that the ALJ's evaluation of Dr. Bjork's opinion is not supported by substantial evidence.

> The District Court is obligated to (1) confirm that the Commissioner adhered to the controlling legal standards; and (2) confirm there is substantial evidence to support the decision of the Commissioner. These obligations are not in the alternative. Where the Commissioner fails to adhere to a mandatory legal standard that has the potential to materially affect the outcome, it is not the role of the District Court to give the Commissioner a pass for the ALJ's failure to apply controlling legal standards. The proper action for the District Court is to remand the case to the agency with the mandate to weigh and reconcile the conflicting evidence in accord with the controlling legal standards.

*Hogue v. Colvin*, 2016 WL 430482, at *6. While the ALJ's decision provided specific reasons for why he accorded Dr. Bjork's opinion little weight, the reasons "were not based on persuasive contrary evidence and did not merit a departure from the treating physician rule." *Howard v. Saul*, 408 F. Supp. 3d 721, 733 (D.S.C. 2019) (remanding case because the ALJ failed to explain adequately the contradictions or inconsistencies between the doctor's opinion and the evidence upon which the ALJ relied).

The court notes that re-evaluation of Dr. Bjork's opinion may produce a different result. If Plaintiff is deemed disabled, the ALJ may then need to analyze whether drug addiction is a contributing factor material to the determination of disability.

17

3. Plaintiff's Remaining Arguments

Plaintiff also alleges the ALJ erred in rejecting IQ testing done by Dr. Brabham, erred in assessing her RFC, and erred in assessing her credibility. Because the court finds that the ALJ's evaluation of Dr. Bjork's opinion provides a sufficient basis for remand, the court declines to specifically address Plaintiff's remaining allegations. However, the Commissioner should consider them on remand.

III. Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds remand is warranted based on the ALJ's evaluation of the treating physician's opinion. The decision of the Commissioner is reversed pursuant to 42 U.S.C. § 405(g) and remanded to the agency for further action consistent with this order.

IT IS SO ORDERED.

February 26, 2020  Kaymani D. West
Florence, South Carolina  United States Magistrate Judge